DILTZ et al. v. DODSON et al.    (No. 8931.)

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 30, 1918.)

1. APPEAL AND ERROR ⬉934(1)—FINDINGS OF FACT—PRESUMPTION.

Where trial was had by the court without a jury, and no findings of fact were filed by the trial judge, every reasonable presumption must be indulged in support of the judgment rendered.

2. FRAUDULENT CONVEYANCES ⬉222 — NECESSITY FOR RECORDING—"CREDITOR."

A creditor who has fixed a lien upon land by the levy of attachment or other judicial process or by the filing of abstract of judgment in the deed records, is a "creditor" within Vernon's Sayles' Ann. Civ. St. 1914, art. 6824, making unrecorded deeds of conveyance void as to creditors.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Creditor.]

**3. FRAUDULENT CONVEYANCES ⊜⟿283—CRED-ITORS—BURDEN OF PROOF.**

In a controversy between a holder of a prior unrecorded deed and a "creditor" under Vernon's Sayles' Ann. Civ. St. 1914, art. 6824, the holder of the unrecorded deed has the burden of showing that the creditor had notice at the time his lien attached or prior thereto.

**4. JUDGMENT ⊜⟿788(1) — LIEN — NECESSITY FOR RECORDING DEED.**

The common-law rule that a judgment lien attaches only to such estate in land as is owned by judgment debtor at the time the abstract of judgment was filed, notwithstanding a prior unrecorded deed, has been abrogated by Vernon's Sayles' Ann. Civ. St. 1914, art. 6824.

**5. TRUSTS ⊜⟿372(1) — FOLLOWING TRUST PROPERTY—BURDEN OF PROOF.**

The burden is upon the party claiming a resulting trust in land to trace the funds claimed as his own into the property purchased.

**6. EVIDENCE ⊜⟿113(8) — COST—VALUE OF LAND.**

In an action wherein it was claimed that a transfer of land from husband to wife was fraudulent, testimony that land conveyed had cost $11 an acre when bought 15 years prior to the transfer was insufficient to show the value of land under a claim that the land was transferred in payment of a debt to the wife.

**7. FRAUDULENT CONVEYANCES ⊜⟿118(2)— PREFERRING WIFE.**

A husband may prefer his wife to another creditor in the payment of a debt which he owes her, provided the transaction is free from fraud, and no more property is conveyed than is reasonably necessary at its fair market value to settle the debt.

**8. FRAUDULENT CONVEYANCES ⊜⟿298(3)— PREFERRING WIFE.**

Evidence *held* to warrant a finding that a transfer of land from husband to wife was made for the purpose of defrauding creditors.

Appeal from District Court, Taylor County; Joe Burkitt, Judge.

Suit by Nannie R. Diltz and another against J. T. Dodson and another. Judgment for defendants, and plaintiffs appeal. Affirmed.

W. H. Graham, of Dallas, for appellants. Scarborough & Davidson, of Abilene, for appellees.

DUNKLIN, J. Mrs. Nannie R. Diltz, joined pro forma by her husband, W. L. Diltz, instituted this suit to restrain, by writ of injunction, the sale under execution of 320 acres of land which she claimed as her separate property, and which had been levied on to satisfy a judgment rendered against her husband, W. L. Diltz, in favor of R. W. Rogers, who, together with the sheriff levying the execution, were made parties defendant to the suit. From a judgment denying plaintiff the relief prayed for, she has prosecuted this appeal.

The judgment upon which the execution was issued was rendered by the county court of Taylor county May 2, 1916, and an abstract of the same was duly filed for record in the record of deeds of that county on May 6, 1916; all statutory requirements necessary to make the record of such abstract of judgment a lien upon any real estate owned by W. L. Diltz, which was subject to execution being complied with. The cause of action asserted in that suit was a judgment which R. W. Rogers had theretofore recovered against W. L. Diltz in the county court of Carter county, Okl., on November 16, 1915. The judgment rendered in county court of Carter county, Okl., contains the following recitals which show the amount of judgment and the indebtedness of W. L. Diltz to R. W. Rogers upon which the judgment was based:

"It is being fully shown to the court that this suit is based upon the consideration of $422.50 paid by the plaintiff to the defendant for four head of mules, which the defendant claimed and represented to the plaintiff were free and clear and discharged of all liens and incumbrances, and that he had a perfect right to sell the same, when in truth and in fact the said four mules were then mortgaged and incumbered to the amount and extent of $422.50, and that the plaintiff was compelled to pay said amount on said mules, in addition to what he had already paid to the defendant for the same, and that the defendant's title to said mules had wholly failed, and, being fully advised in the premises, the court doth find for the plaintiff, in the sum of $422.50, together with 6 per cent. interest thereon, from the 7th day of January, 1913, aggregating at this time $494.30, and that said amount shall draw interest from this date until paid at the rate of 6 per cent. per annum."

The judgment rendered by the county court of Taylor county was for the sum of $514.10, which was the aggregate of the principal and the accumulated interest of the former judgment.

On April 1, 1916, 1 month and 1 day prior to the date of the judgment rendered by the county court of Taylor county, Tex., and approximately 4½ months after the date of the judgment rendered by the county court of Carter county, Okl., W. L. Diltz executed to his son W. L. Diltz, Jr., a deed of conveyance, purporting to convey the 320 acres of land in controversy in this suit, also another tract of 240 acres of land, also two town lots in the town of Merkel. The consideration recited in that conveyance was "one dollar cash paid by W. L. Diltz, Junior, and the assumption of all indebtedness." On the same day W. L. Diltz, Jr., received the deed of conveyance he executed a similar conveyance to his mother, Mrs. Nannie R. Diltz, which purported to convey to her the same property, the consideration recited in that

⊜⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes.

instrument being "one dollar paid by Nannie R. Diltz and the assumption of all indebtedness." All the property described in those conveyances was situated in Taylor county, Tex.

In the petition filed by plaintiff in this suit Mrs. Diltz claimed title to the 320 acres of land in controversy as her separate property through the deed last mentioned; and, in addition to her prayer for a writ of injunction to restrain the sale of the property to satisfy the judgment, she also sought a decree removing the cloud from her title, cast thereon by the record of said abstract of judgment.

In their answer the defendants, after a general denial of all the allegations contained in plaintiff's petition, pleaded specially that the conveyance from Wt L. Diltz, Sr., to his son, W. L. Diltz, Jr., and the conveyance from the son to his mother were executed for the purpose of defrauding the creditors of W. L. Diltz, Sr., and especially for the fraudulent purpose of avoiding payment of the debt he owed to the defendant Rogers, evidenced by the two judgments above mentioned, and that such conveyances were therefore null and void, leaving the title to the property in controversy still in W. L. Diltz, Sr., and subject to the payment of the judgment now held by Rogers.

The deed from the judgment debtor, W. L. Diltz, to his son and the deed from his son to Mrs. Nannie R. Diltz were both filed for record in the deed records of Taylor county on July 8, 1916, 2 months and 2 days after the abstract of judgment had been duly filed and recorded in the deed records of that county.

[1] The trial was by the court without a jury, and as no findings of facts were filed by the trial judge, every reasonable presumption must be indulged in support of the judgment rendered.

[2] By article 6824, 4 Vernon's Sayles' Texas Civil Statutes, it is provided that an unrecorded deed of conveyance to land "shall be void as to all creditors and subsequent purchasers * * * without notice." And it is well established by a long line of decisions in this state that a creditor, who has fixed a lien upon land by the levy of a writ of attachment or other judicial process or by the filing of an abstract of judgment in the deed records is a creditor within the meaning of the article of the statute just referred to. McKaney v. Thorp, 61 Tex. 648, and decisions there cited.

[3] It is also well settled that in a controversy between the holder of a prior unrecorded deed and such a creditor the holder of the unrecorded deed has the burden of showing, by proof, notice of his deed to such creditor at the time the latter's lien attaches, or such notice prior thereto. Turner v. Cochran, 94 Tex. 480, 61 S. W. 923. There was no proof whatever offered by the plaintiff to show such notice to Rogers at the time the abstract of judgment was filed, or at the time the execution was levied upon the land. As noted already, Mrs. Diltz in her petition specially pleaded that she acquired title to the property in controversy through the deed from her son to her, mentioned above. That deed contains no recitals to show that the title therein attempted to be conveyed was for the separate use and benefit of Mrs. Diltz; in other words, it contained no recitals which would have the legal effect to make the property therein attempted to be conveyed the separate property of the grantee. Her husband testified upon the trial, in effect, that his conveyance to his son and the conveyance by the son to his mother was in pursuance of his purpose and intention thereby to vest title in his wife as her separate estate. If the deed under such circumstances did have the effect to vest legal title in the wife as her separate estate, then it would be held void under the statute because it was unrecorded when the judgment lien attached, and because of the absence of proof that at the time Rogers fixed his lien, or before that date, he had notice of such unrecorded deed.

[4] Appellant insists that the judgment lien in favor of Rogers attached to such estate only in the land in controversy as was owned by W. L. Diltz, Sr., at the time the abstract of judgment was filed, notwithstanding the deed, under which his wife claimed, was unrecorded. Such is the common-law rule. But that rule has been abrogated by our registration statute, as is well settled by a long line of decisions of our Supreme Court, notably, Blankenship v. Douglas, 26 Tex. 226, 82 Am. Dec. 608; Grace v. Wade, 45 Tex. 522, and many other decisions which might be cited.

According to the testimony of W. L. Diltz, plaintiff's husband, the couple were married in 1880, at which time Mrs. Diltz owned 40 acres of land in Bosque county as her separate estate. Later the husband purchased 40 acres in the same county as his separate estate. The two tracts were kept until the year 1906 when they, together with 80 acres additional in the same county, were sold. During the year 1901 the couple moved to Taylor county, where they have resided ever since. The 320-acre tract of land in controversy was purchased in 1901 by W. L. Diltz, Sr., who took title thereto in his own name. The purchase price for the tract was a fraction over $11 per acre, one-third of which was paid cash, and purchase-money notes were given for the balance, due in one, two, and three years, the last of which matured in 1904, which was approximately two years prior to the sale of the 40 acres owned by Mrs. Diltz in Bosque county. He further testified as follows with reference to those notes:

"My recollection is that I paid them at maturity. When I sold out down yonder, this 160 acres in 1906, I put it up over against the debt on that 320 acres. I guess you would call it that. I do not think that before I had sold the 160 acres I had finished paying off these notes against this property out here. My recollection is that we paid two of those notes out of that. That would be about $1,400. The notes were made in 1901, and would be due in 1902 and 1903. This land (160 acres in Bosque county) was sold in 1906. I do not think that the money I got out of the 160 acres was applied on the 260-acre tract (evidently referring to the 260-acre tract deeded by the witness to his son and by the son to Mrs. Diltz). I worked for the money with which I made the payment on the 260-acre tract which I bought in 1906. I would not be positive—I could not be—that I paid those notes on that 320 acres of land at maturity. My recollection is that I paid them out of that land. I do not know that it is true that I paid those notes, like I said awhile ago, at maturity. I think I paid them out of the land. I do not know when I sold the land. It is my best recollection that I paid as many as two of those notes out of the land. I conveyed to my wife this 260-acre tract of land. The conveyance to my son was merely a means of getting the title into my wife. My wife was demanding a settlement of me. With regard to whether or not she was demanding one-half interest in the community estate, that was her individual property. She claimed that as her separate property. She felt like the 260 acres and the 320 acres would satisfy her as her interest in the community property, as her separate estate, if that is the way you want to put it. That seemed to be the proposition."

He further testified, in substance, that at the time of the conveyance to his wife he owed debts aggregating approximately about $10,000; that on April 1, 1916, when the deeds mentioned above were executed, he also conveyed by deeds three other tracts, consisting of 171 acres in Jones county, worth $30 per acre, against which there was an indebtedness of $1,750, a tract of 335 acres in Fisher county, worth $25 per acre, against which there was an incumbrance of $1,880 and another tract of 640 acres in Gaines county, worth $6 per acre, against which there was an incumbrance in favor of the state of about $960, and still another tract in Jones county of about 80 acres, worth $25 per acre, against which there was an incumbrance of $600. He also owned about 20 head of cattle, 12 head of horses and mules worth about $1,000. All of the property just mentioned, real and personal, was transferred by W. L. Diltz, Sr., to his children on April 1, 1916, the same day that he executed the deed to his son for the use and benefit of his wife. According to his testimony the conveyances, last mentioned, to his children were by way of a division of his property among them. After such conveyances were made he owned a homestead which was occupied by himself and wife, worth about $3,000, but he owned no other property whatever with which to pay any of his debts. W. L. Diltz, Sr., was the only witness who testified at the trial of the case; his testimony and the documentary evidence being the only evidence shown in the statement of facts. He gave illness of his wife as the reason why she was not present to testify upon the trial, but there is no suggestion in the record of any effort made to postpone the trial in order to procure her testimony.

Appellant insists that the testimony of W. L. Diltz showed that the purchase money realized from the sale of Mrs. Diltz's 40 acres in Bosque county which she owned at the time of her marriage was used in the purchase of the 320 acres in controversy, and that therefore she owned the equitable title to the property before it was conveyed to her by her husband through her son on April 1, 1916, and that, as such equitable interest in the property was not subject to registration, our registration statute would not control, but that the common-law rule, which would limit the judgment lien of Rogers to such interest only as W. L. Diltz owned in the property at the time the lien attached, would govern.

This theory of right to a recovery by Mrs. Diltz is advanced for the first time in her briefs, filed in this court. She alleged that "she acquired the title to said property from her son, W. L. Diltz, Jr., by a deed of date April 1, 1916, filed for record July 8, 1916, and recorded in Book 88, page 446, of the Deed Records of Taylor County, Tex., and that said W. L. Diltz, Sr., has no right, title, or interest in said property." The petition contains no allegation that Mrs. Diltz acquired title to the property prior to the date of that deed, nor in any other manner than through that conveyance.

It has been frequently decided that as resulting trusts cannot be recorded, in a controversy between the beneficiary of such a trust and a subsequent creditor of the one who holds the title for the benefit of the cestui que trust, the registration statutes are not applicable. See Parker v. Coop, 60 Tex. 111, and decisions there cited.

It may be doubted that plaintiff's petition would, in any event, warrant the relief prayed for upon that theory; and even though it should be held sufficient to present that issue it is clear, at all events, that she did not establish title to the entire interest in the 320 acres, since, according to the uncontradicted testimony of her husband, the cash payment of one-third of the purchase price of the land was from community funds.

[5] It is a familiar rule, further, that in order to establish such a resulting trust, it is incumbent upon the party claiming it to trace the funds claimed as his own into the property purchased. The burden was upon Mrs. Diltz to make such proof in this case, and that she has failed to do so with any reasonable certainty we think is clear

from the testimony of W. L. Diltz himself, set out above.

[6, 7] Another theory advanced by appellant in her brief, but not suggested in her pleadings is that the 320-acre tract, the 260-acre tract, and the two town lots which were conveyed to her by her son were really conveyed in payment of an indebtedness to her arising from the use by her husband of the proceeds of the sale of her 40-acre tract in Bosque county, which, according to the testimony of her husband, amounted to approximately $1,200. We recognize the rule announced in numerous decisions of our state that a husband may prefer his wife to another creditor in the payment of a debt which he owes to her, provided the transaction be free from fraud, and no more property is conveyed than is reasonably necessary, at its fair market value, to settle the debt. Owens v. Clark, 78 Tex. 547, 15 S. W. 101.

But there was no proof whatever of the value of the property in controversy at the date of the deed to Mrs. Diltz from her son. Testimony of her husband that it cost a fraction over $11 per acre when he bought it 15 years prior to that date, cited by appellant, falls far short of such proof. Nor was there any testimony to show just what indebtedness, if any, Mrs. Diltz agreed to assume as a part consideration for the conveyance to her from her son.

[8] Furthermore, the testimony of W. L. Diltz, taken as a whole, was so contradictory on the vital issues that, when considered in the light of the surrounding circumstances, including the fact that he attempted to dispose of all his property at the same time by transferring it to the different members of his family, leaving indebtedness aggregating about $10,000 with no property whatever reserved to pay the same, the trial court was fully warranted in concluding that the conveyance to Mrs. Diltz through the medium of her son was not a bona fide transaction, but was a mere subterfuge, resorted to by Diltz, and knowingly participated in by his wife, for the purpose of defrauding his creditors, especially appellee Rogers.

For the reasons indicated, all the assignments are overruled, and the judgment is affirmed.