**KARR v. COCKERHAM et ux.**

No. 4218.

Court of Civil Appeals of Texas. Amarillo.
April 30, 1934.

Rehearing Denied May 28, 1934.

Jno. A. Coffee, of Hereford, and Royce A. Oxford, of Plainview, for appellant.

Dameron & Dameron, of Hereford, for appellees.

HALL, Chief Justice.

The appellant, as plaintiff below, filed this suit against appellees, O. D. Cockerham and wife, Hester L. Cockerham, to set aside three alleged fraudulent conveyances made by Cockerham to his wife on August 5, 1930, and to subject the real estate therein conveyed to the payment of a judgment which he had recovered against O. D. Cockerham.

The material facts alleged are that on or about the 5th day of August, 1930, with the intent to hinder, delay, and defraud his creditors, among which was the plaintiff, Cockerham executed three deeds, naming his wife as grantee, in which instruments he sought to convey all of lots Nos. 5, 6, 7, 8, and 9 in block 19 of the original town of Sudan, in Lamb county; all of lot No. 14 in said block; also all of lots 20 and 21 in block 5 of Evants addition to the city of Hereford in Deaf Smith county, together with all of lots 8, 9, and 10 in block 19 of the original town of Hereford; and also the south half of section 152, block M7, Deaf Smith county, containing 320 acres. He alleges that said deeds were duly and properly recorded; that the property known as the Cordova Hotel situated in the city of Hereford was occupied by the defendants on said 5th day of August; that the recited consideration in each of said conveyances was "$10.00 cash and the love and affection which I bear to the said Hester L. Cockerham, she being my wife"; that after making said conveyances, O. D. Cockerham owned no other property out of which his creditors might obtain satisfaction of their claims in whole or in part; that the recited consideration in each of the deeds was insufficient and inadequate; that they were voluntary conveyances and without consideration sufficient to support them in law; that they were executed for the purpose of placing the grantor's property beyond the reach of his creditors and with the intent to delay, hinder, and defraud his creditors, the plaintiff being one of them.

It is further alleged that on the 2d day of February, 1932, at a regular term of the district court in and for Deaf Smith county, plaintiff, Karr, recovered a judgment against Cockerham in the principal sum of $3,798.24, which bore interest at 7 per cent. per annum; that there was credited upon said judgment on the 5th day of April, 1932, the sum of $930.70; and that there remains an unpaid balance due upon said judgment in the sum of $2,912.02. He further alleges that thereafter, on the 9th day of February, 1932, in the manner prescribed by law, he filed an abstract of his said judgment in the office of the county clerk of Deaf Smith county, which was duly recorded on the 10th day of February, 1932, and indexed as required by law; that an abstract of said judgment was also filed in the office of the county clerk of Lamb county on the 5th day of July, 1932, and was by the clerk duly recorded and abstracted on the following day and by reason thereof there was created a lien upon all of the property of the defendant O. D. Cockerham situated in Deaf Smith and Lamb counties; that said judgment is a valid, subsisting, and unsatisfied lien and is not now dormant.

The appellees answered by general demurrer, special exceptions, a plea of homestead as to lots 5, 6, 7, 8, and 9 in block 19 of the original town of Sudan. They further alleged that all the property described in plaintiff's petition is and was at all times since the purchase thereof, the separate property of Mrs. Cockerham; that it was paid for out of her separate funds and estate inherited from her deceased mother and that the property was purchased for her use and benefit and no other or further money or property entered into the purchase of either lot or tract of land involved; that the property was conveyed to her husband as a matter of convenience and he was acting as her trustee and agent in the purchase of said property; and that she at all times held the equitable title thereto and that the same was held in trust for her by her husband.

She pleads in the alternative that all the money which entered into the purchase of the property described in plaintiff's petition was advanced by her out of her separate estate and was used by her husband in paying for said property; that if it should be determined that both the legal and equitable titles thereto vested in her husband, then that he was indebted to her to the extent or more than the value of the property described in plaintiff's petition; that said conveyances were made in good faith and in payment of said indebtedness, which was more than the value of the property conveyed and that the consideration named in said deeds was not the true consideration; that said consideration was in fact the repayment to her of the sums of money due her separate estate which she had advanced to her husband in payment for said land.

The case was submitted to a jury upon special issues, in response to which they found that Cockerham did not convey any of the property described in the petition to his wife with the intent to hinder, delay, or defraud his creditors; that after said conveyances he

owned no other property; that she knew he was conveying the town lots in Sudan to her at the time of the conveyances; and that the deeds conveying the town lots in Sudan and the land in Lamb county were delivered to her. The jury further found that the town lots in Sudan situated in block 19 of the original town were purchased for Mrs. Cockerham with her separate funds and estate inherited from her mother and that they were purchased for her separate use and benefit; that no other money or property than the separate estate and funds of Mrs. Cockerham were used in the purchase of said lots; that said lots were conveyed to Cockerham for the purpose of being held by him for the use and convenience of his wife; that the consideration named in the several deeds was not the true consideration, the true consideration being money advanced by her out of her separate estate; that at the time of said conveyances of the lots in Sudan, Cockerham was indebted to his wife in the sum of $5,500; that at the time he conveyed the lots in Sudan to her, he was indebted to her and that the reasonable market value of said lots 5, 6, 7, 8, and 9 in block 19 was $3,500; and that the reasonable market value of lot 14 in block 19 was $2,000.

At the request of defendants, the court gave the jury this special instruction No. 2:

"You are instructed that a debtor may prefer one creditor over another and convey him his property in satisfaction of his or her claim, even though the effect of such conveyance is to hinder and delay other creditors and even though the debtor be in failing circumstances, provided the creditor acts in good faith and takes no more property than will be sufficient to pay his debt and that if such creditor takes more property than is sufficient to pay the debt, then the conveyance will be fraudulent and void as to other creditors if the debtor conveyed with intent to delay, hinder or defraud other creditors and the creditor at the time of the purchase knew of such intent of his debtor to delay, hinder or defraud creditors or knew such facts as would put a person of reasonable prudence on inquiry which would have led to knowledge of such intent."

Based upon the verdict, the court decreed that all of lots 5, 6, 7, 8, 9, and 14 in block 19 of the original town of Sudan to be the separate property and estate of defendant Hester L. Cockerham and in no manner subject to the judgment lien of plaintiff against O. D. Cockerham, and that the plaintiff take nothing by reason of said suit and that defendants recover their costs.

█ In addition to other defenses, the appellees set up the fact that the property known as the Sudan Hotel, situated on lots 5, 6, 7, 8, and 9 in block 19 of the original town of Sudan, was and had been the family homestead long prior to the institution of the suit by plaintiff and prior to the date the abstract of the judgment in plaintiff's favor was filed and recorded in Lamb county; that they had acquired such property with the intention of making it their homestead and it was in fact their homestead from the date of its acquisition.

While there was some testimony introduced bearing upon this issue, the appellees failed to request the court to submit the issue of homestead to the jury and in so failing waived the defense of homestead. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084.

The next contention to be considered is that because Mrs. Cockerham furnished $1,000 of her separate estate which was applied to the purchase of the land in Floyd county, and because this land was exchanged for the Sudan Hotel and a labor of land (which was subsequently exchanged for lot 14 in Sudan), a trust resulted in her favor and she was entitled to hold the Sudan property by reason of the trust relation, even though the property had been conveyed to her husband in the exchange.

█ The burden was upon Mrs. Cockerham to trace the $1,000 in to the Sudan property. Diltz v. Dodson (Tex. Civ. App.) 207 S. W. 356; Spencer v. Pettit (Tex. Civ. App.) 268 S. W. 779; Id. (Tex. Com. App.) 2 S.W.(2d) 422. This she failed to do. While the record shows that probably her $1,000 was a part of the consideration for the land which was traded for the hotel, it also shows that in acquiring the hotel other property, presumably community property of the Cockerhams, consisting of eight cattle and other live stock, together with farming tools, entered into the consideration. Under the well-established rule no trust would result in her favor as to the entire property; she would be entitled only to her pro rata share. For instance, if the value of the cattle and other live stock and the farming tools amounted to $2,000, a trust would result in her favor for only a one-third interest in the Sudan property. The excess would be community property and subject to the appellant's lien. Smalley v. Paine, 62 Tex. Civ. App. 52, 130 S. W. 739; Penman v. Blount (Tex. Civ. App.) 264 S. W. 169; 1.

Perry on Trust (7th Ed.), § 132. There is no evidence whatever in the record which tends to show the value of any of the thirteen cattle, other live stock, and farming implements which entered into the consideration. She has not, therefore, discharged the burden which rested upon her to trace her property in to the Sudan property, and show the extent of her pro rata share. The judgment is therefore not supported by the testimony.

It further appears that after the Cockerhams acquired the Sudan Hotel, they sold it to one Carpenter. The deed was not introduced in evidence, but Cockerham testified that they received from Carpenter, as consideration or part thereof, a residence in the town of Sudan, together with two lots and later had to take them back. He testified that later they sold the property to another purchaser not named. This deed was not introduced in evidence and nothing is said about the consideration received for it. He further testified that the hotel was conveyed to him in 1929 by Iola and L. W. Cochran for a recited consideration of $8,000 in cash paid. The testimony is not very clear, but we think it is sufficient to show that after they acquired the property, they sold it to three different parties. It does not appear that Mrs. Cockerham's separate interest was protected in these various transfers and reconveyances nor the value of such interest. On account of the meager testimony, the record fails to show that the court would have been justified in declaring Cockerham as the resulting trustee for the benefit of his wife.

The remaining contention to be disposed of is that urged by appellant that the deeds were void as fraudulent conveyances.

█ A husband may prefer his wife to other creditors and may pay a debt which he owes her, provided the transaction is free from fraud and no more property is conveyed than is reasonably necessary at its fair market value at the time of the transfer, to settle the debt.

██ The jury found that at the time of the conveyances Cockerham was indebted to his wife in the sum of $5,500. There is no evidence to sustain this finding. The testimony shows that in the latter part of 1917 or early part of 1918, Mrs. Cockerham's father gave her $1,000 in money, which was deposited in the bank by her husband to his credit and was invested in a quarter section of land in Floyd county, which was afterwards exchanged for the lots in Sudan upon which the hotel is situated and a labor of land. That afterwards their equity in the labor was ex-

changed for lot 14 in the same block upon which the hotel was situated. Cockerham testified that his father-in-law thereafter gave Mrs. Cockerham three cows and two calves. Lee testified that in addition to the $1,000, he gave Mrs. Cockerham two or three cows, but did not remember how many and in addition gave her a few hogs. He further testified that he gave her a half interest in a garage at Sudan and a lot on which a drug store now stands. There was no proof showing the value of any of this personal property or the lot or half interest in the garage. The only evidence upon which the jury had to base the finding that Cockerham was indebted to his wife at the time of the transfers in the sum of $5,500 is the statement that she let him have the $1,000. Even if she was entitled to interest upon this $1,000 up to the time of the transfers at the legal rate (a question which we do not decide), the indebtedness would be considerably less than $2,000. The jury could not guess at the value of the remaining property, if any.

Where there is an issue of damages to be recovered for personal injuries or where the value of property destroyed or converted is an issue, and there is a conflict in the testimony, it is peculiarly within the province of the jury to find the amount and reconcile the conflict, if possible, rendering a verdict for whatever damages they think the plaintiff has sustained, but that rule has no application to this case. The only basis for the estimate made by the jury of the amount of the indebtedness found in the evidence is the fact that $1,000 of the wife's money was given to her husband. In such cases the jury is not at liberty to arbitrarily fix an amount greater than the evidence justifies. Texas Employers' Insurance Association v. Pearson (Tex. Civ. App.) 67 S.W.(2d) 630; Wentworth v. King (Tex. Civ. App.) 49 S. W. 696; Weisiger v. Chisholm, 28 Tex. 780; Shropshire v. Doxey, 25 Tex. 128; Jeanes v. Blount (Tex. Civ. App.) 206 S. W. 209; Clark v. Spurdis (Tex. Civ. App.) 258 S. W. 881; Smith v. Hoffman (Tex. Civ. App.) 201 S. W. 204.

The pleading fails to allege the value of the cattle or the value of the specific real estate and no proof was offered to show the value of any of this property. It is fundamental that a verdict and judgment must be supported by both pleading and proof. According to some of the witnesses, the property which Cockerham conveyed to his wife on August 5, 1930, was of the fair market value of $15,000. According to other testimony, it was considerably less.

For some reason unexplained in the record, the findings of the jury are limited as to the value of the Sudan Hotel property and the value of lot 14 in the same block. There is no finding as to the value of any of the other property which Cockerham conveyed to his wife at that time.

It is unnecessary to consider the remaining questions presented by appellant.

For the reasons stated, the judgment is reversed and the cause remanded.

### On Motion for Rehearing.

The appellees insist that we erred in the original opinion in holding that the burden rested upon Mrs. Cockerham to trace her funds into the property involved, admitting that this is the rule in cases involving constructive trusts, but does not apply to resulting trusts.

This contention is contrary to all the authorities we have found, and, in addition to those cited, we refer to Turner v. Dinwiddie (Tex. Civ. App.) 276 S. W. 444; Blumenthal v. Nussbaum (Tex. Civ. App.) 195 S. W. 275, Id. (Tex. Com. App.) 221 S. W. 944.

■■■ A further contention is that we erred in stating that because appellees failed to request the court to submit the issue of homestead to the jury, that issue was waived.

The only issue bearing upon the question of homestead was special issue No. 1, as follows:

"Did the defendants intend to move to and occupy Lots 5, 6, 7, 8 and 9 in Block 19 in the Original Town of Sudan, Lamb County, Texas, as their homestead, prior to July 5, 1932?"

The jury answered this in the affirmative.

This submits only one element necessary to enable the court to determine whether the Sudan property had become the appellees' homestead. Intent itself. will not impress the homestead character upon property [Brooks v. Chatham, 57 Tex. 31; Benzel v. Commercial Nat. Bank (Tex. Civ. App.) 1 S.W.(2d) 695], but such intent must be accompanied with a preparation demonstrating the intent and the preparation must be prosecuted with reasonable diligence to the extent that within a reasonable time they will result in the actual use and occupancy or else it will be deemed that the intent to so use and occupy has been abandoned [Parker v. Cook, 57 Tex. Civ. App. 234, 122 S. W. 419].

The testimony shows that Cockerham and his wife had occupied the Cordova Hotel as their homestead for about four and one-half years. The abstract of judgment was recorded in Lamb county, Tex., fixing the judgment lien upon the Sudan property, on July 5, 1932. Mrs. Cockerham testified that they moved from the Cordova Hotel the 1st of July, 1932, and that they moved to Sudan upon the property which they now claim as their homestead, August 11, 1932. Cockerham was asked where they moved or stayed immediately after leaving the Cordova Hotel. His answer was, "Stayed at the Hereford Hotel." He was then asked, "How long did you stay there?" He answered, "Stayed there from the 7th of July until the 11th of August." This testimony indicates that they did not leave the Cordova Hotel until the 7th of July and conflicts with the above-quoted testimony of his wife.

The law is settled that a new homestead cannot be acquired until there has been an actual abandonment of the old homestead. As said in Nunn on Texas Homesteads, 172:

"When the homestead character has been impressed upon property by the use and occupancy thereof as such such character will remain so long as the use and occupancy continues, irrespective of what the intent of the head of the family may be with reference to the abandonment of the property as homestead. A homestead may be acquired without actual use and occupancy in that an intent to use and occupy it as a homestead, coupled with acts of preparation manifesting such intent, will be sufficient, but no preparations to abandon the homestead, coupled with an intent to abandon, will be sufficient to operate as an abandonment of the homestead that has acquired its character by occupancy as such."

Citing, amongst other cases, Pierce v. Langston (Tex. Civ. App.) 193 S. W. 745. In that case the homestead claimant gave as an excuse for remaining upon the old homestead and failing to occupy the new, that the latter was occupied by a tenant. Judge Key held that such an excuse was not tenable. The author further says:

"Since there must be an actual cessation of the use of the property as a homestead before it can be abandoned as such, and since no new homestead can be acquired until the old one has been abandoned, it follows that there must be an actual cessation of the use of the old homestead as such before a new one can be acquired. Thus where an issue arises as to which of the two places

is the homestead, if it be made to appear that the use and occupancy of the old homestead has not ceased, this will determine that it is the homestead."

Citing Pierce v. Langston, supra; O'Brien v. Woeltz, 94 Tex. 148, 58 S. W. 943, 59 S. W. 535, 86 Am. St. Rep. 829; Johnston v. Martin, 81 Tex. 18, 16 S. W. 550; Archibald v. Jacobs, 69 Tex. 248, 6 S. W. 177.

The court failed to submit the issue of the abandonment of the old homestead. This being a necessary element and prerequisite to the acquisition of a new homestead, the appellees failed to request that this issue be submitted and, as said in International-Great Northern R. Co. v. Casey (Tex. Com. App.) 46 S.W.(2d) 669, 671:

"The decisions of this state hold that, when a jury is demanded to try the facts, litigants are entitled to have every essential and independent issue submitted to the jury for a finding thereon. The finding of the jury that the railroad company was negligent, as above described, without also finding that such negligence was the proximate cause of the damages sustained by plaintiff, would not support a judgment based thereon. If the owner relied upon the negligence of the operatives of the train in approaching the crossing, in failing to ring the bell and blow the whistle, for a recovery, it was essential that there should have been submitted to the jury an issue that the negligence of the operatives of the train in approaching said crossing was the proximate cause of the damages sustained by him. This record does not show that the defendant in any way waived this issue. The settled doctrine in this state is that proximate cause is a question of fact for the jury. It can only become a question of law when the facts and circumstances are such but that one reasonable conclusion can be drawn therefrom. The law places the burden upon the plaintiff to allege and prove that he was entitled to a judgment against the railroad company, and, if the pleadings and evidence raise certain issues, it was the duty of the trial court to submit the essential issues to the jury for a finding thereon. If the court

failed to submit such issues, it was the duty of plaintiff to request their submission. If plaintiff failed to do this, he has not met the burden placed upon him by law. If it was not done, the law presumes that he waived it, and, unless it is a matter that is incidental or supplemental to the ultimate issues, then the trial court would not be justified in finding this essential fact without having an answer to the jury first made on the issues submitted."

And for a stronger reason the court would not be justified in finding upon the issue, nor will such a finding be presumed, when the testimony is conflicting upon the issue, as in the instant case. Garrett v. State (Tex. Civ. App.) 51 S.W.(2d) 822, 823.

Having failed to submit the issue of abandonment which is the paramount issue upon the question of homestead under the evidence in this case, the appellees waived that defense.

The appellees insist that the deeds executed by Cockerham to his wife were not voluntary conveyances and that R. S. art. 3997 does not apply; that the rights of the parties are to be determined by the rules announced relating to article 3996. The appellant contends that it was a voluntary conveyance and that is an issue which this court is not permitted to decide. It is undisputed that the appellant, Karr, was a prior creditor who had reduced his claim to judgment before the execution of the conveyances which he says were fraudulent. There are what the law terms badges of fraud shown by the record which, in view of another trial, we are not permitted to discuss. It is uncontroverted that the $1,000 which Mrs. Cockerham's father gave her was used by her husband in purchasing the first property, but as we understand the record, the testimony fails to trace the $1,000 into the property in controversy, or, in fact, to show that any of said sum in its various mutations had ever been invested in this property. Under such circumstances we cannot permit the judgment to stand.

The motion for rehearing is overruled.