## FREES & SON v. GEORGE BAKER.

### No. 6905.

1. **Surety May Buy of His Failing Principal.**—Baker was surety for Stockbridge & Teague on four notes to Frees & Son. It was contended that he had signed two of the notes by mistake instead of two others unsecured for same amounts. Bake being solvent, to save himself took the stock on hand of Stockbridge & Teague, assuming to pay the four notes signed by him as security. *Held*, that as Baker as surety could take goods at a fair value to secure himself, so it would be legal for him to assume other debts for any excess of value of the goods taken from his principal and for which he was not liable. Whether Baker was bound upon the notes as surety was of no consequence as affecting his title to the goods, as he had assumed the notes in the purchase of the goods.

2. **Creditor or Other Person Taking Goods from Debtor.** — If a creditor or other person having a legal demand against another receives from his debtor property for his claim bona fide and no more than is reasonably sufficient to pay the same, he may do so, because he is a "creditor or other person" who is protected by the statute; the principle being that if the debtor transfers the property directly to the person to whom the law intends it should go the conveyance can not be fraudulent.

3. **Surety May Buy to Protect Himself.**—Baker by reason of his being surety of the failing debtors, and being himself solvent, was a creditor of his principals upon the notes, although not yet due, such as to entitle him to receive a conveyance of the goods in controversy to indemnify himself against ultimate liability on assumption by him of the debts for which he was surety.

4. **Sale—Mortgage.**—Baker took the stock of goods at agreed price in the amount of the notes assumed. The goods were actually delivered to him. Subsequently he employed one of the closed out firm to sell the stock to realize invoice price for Baker, taking the excess in compensation for selling, etc. The goods were attached as the property of the debtors. *Held*, that the facts constituted a sale, not a mortgage.

ERROR from San Saba. Tried below before Hon. A. W. Moursund. The opinion states the case.

*West & McGown, Leigh Burleson,* and *Reeves & Channing,* for plaintiffs in error.—1. As a plea of purchaser for value in good faith Baker's answer is defective, because it appears therefrom that he has never in fact paid anything for the goods, but at most holds them in trust to pay the debt due Frees & Son; hence he must deliver the goods to them or pay the debt, at least so much of it as was then due.

2. As a plea setting up that he is a preferred creditor it is defective, because it appears therefrom that Baker was only a surety for Stockbridge & Teague, and there could be no pre-existing debt, as the relation of debtor and creditor did not exist. Bank v. Warner, 12 Hun, 306; Wait on Fraud. Conv., 516; Moseley v. Gaines, 10 Texas, 193.

3. If Baker signed two of these notes as surety by mistake, thinking he was signing some other notes, he is in no sense a surety thereon nor liable as such. De Colyar on Guaranty, 445.

4. The transaction was a mere pretended transfer, at best nothing more than a pretended mortgage made for the purpose of hindering, delaying, and defrauding plaintiffs or creditors of Stockbridge & Teague, of which fact defendant had full knowledge; and the pretended consideration in fact could not have been over $800, the amount of said two notes, the other two having been signed by mistake, and secured by deed of trust on land of J. J. Stockbridge. Mills v. Howeth, 19 Texas, 257; Wright v. Linn, 16 Texas, 35; Edrington v. Rogers, 15 Texas,188; Blum v. Simpson, 66 Texas, 84; Greenbaum v. Blum, 59 Texas, 125.

5. As a purchaser Baker ought not to have recovered, because from the evidence it appears (1) that the consideration, if any, causing the transfer to him was far less than the value of the goods; (2) it was made for the purpose of aiding the grantors to defraud Frees & Son. Greenleve v. Blum, 59 Texas, 126; Reeves v. Shry, 39 Texas, 636; McKinnon & Meter. v. Reliance Lumber Co., 63 Texas, 31.

6. Baker was not entitled to recover as a preferred creditor, because the instrument under which he held was in effect a mortgage, and a mortgagee can not try the right of property. Raysor v. Reed, 55 Texas, 266; Osborn v. Koenigheim, 57 Texas, 91; Durham v. Flanagan, 2 Ct. App. C. C., sec. 24.

*Hancock, Shelley & Hancock,* for defendant in error.—It appears from the evidence that Baker purchased the stock of goods in controversy before the issuance and levy of the writ of attachment, obligating himself to pay an amount equal to the fair and reasonable market value of the property. We do not see wherein he has been shown to have made any attempt to defraud, hinder, or delay plaintiffs in error in the collection of their just dues, and think plaintiffs in error fail to show mala fides on the part of Baker. He appears from the record a purchaser in good faith, for a fair and reasonable consideration, at a sale made in due form, prior to the issuance and levy of said writ of attachment. We do not think Baker's right to protect himself from loss, if he could do so honestly and fairly, without attempting to defraud others, will be questioned. The sale to Baker, under which he became liable as principal to Frees & Son for the fair value of the stock of goods, was bona fide. There can be no question but that the judgment of the court below was correct. If this court should hold it in effect a chattel mortgage, then, under the decision in the case of Watterman, Star & Co. v. G. Silberberg, 67 Texas, 100, it would be such a mortgage as the court would sustain. Ellis v. Valentine, 65 Texas, 532.

GARRETT, PRESIDING JUDGE, *Section B.*—This was an action to try the right of property. On December 1, 1885, Frees & Son, plaintiffs in this suit, filed a suit in the District Court of Dallas County against Stockbridge & Teague, of San Saba County, for the sum of

$820.10, and levied an attachment on the goods in controversy on the 4th day of December, 1885. Defendant in error Geo. Baker claimed the goods. Plaintiffs tendered issue that the goods were the property of Stockbridge & Teague, and as such were subject to their writ. The claimant replied that he was a purchaser of said goods in good faith, for a full, fair, and valuable consideration, and was in possession thereof when the attachment was levied; that the consideration was that claimant should assume the payment to plaintiffs of four certain promissory notes executed by Stockbridge & Teague to them, on which claimant was surety, for the sum of $391.91 each, dated July 22, 1885, and due January 22, 1886, April 22, 1886, and on dates afterward; that he had paid the note due January 22, 1886, and was ready and willing to pay the others as they matured; that claimant was solvent and worth in excess of exemptions $50,000, while the aggregate amount assumed by him for said goods was about $1600 and interest; and that said sale was not made with the intent to defraud the creditors of Stockbridge & Teague. To this answer the plaintiffs demurred generally, and pleaded further that Stockbridge & Teague were insolvent at the time of the sale, which was or might have been known to the claimant; that claimant was not surety on any note then due; that of the four notes alleged to have been assumed two were secured by a deed of trust on land belonging to Stockbridge, and that the claimant had failed to pay any of said notes except the one due January 22, 1886; that when conveyed the property was worth $2000; that the goods were in fact the property of Stockbridge & Teague when they were levied on; and that the conveyance was made to defraud their creditors, they and their claimant acting together with such common intent, and hence the sale was pretended and void. The case was tried without a jury, and on May 21, 1886, judgment was rendered in favor of the claimant. J. Frees, one of the plaintiffs, having died after judgment, the writ of error was sued out by W. J. Frees as surviving partner.

Stockbridge & Teague were dealers in musical instruments and supplies at San Saba, and owed the plaintiffs for goods six promissory notes for $391.91 each, bearing date July 22, 1885, and payable two, four, six, eight, ten, and twelve months after date. The two first were unsecured. The others were signed by the claimant as surety; the two last being also secured by a deed of trust on land belonging to Stockbridge. Reeves, a witness for the plaintiffs and their agent, testified that it was intended that Baker should sign the first four notes, but that by mistake he signed the last four, leaving the first two unsecured. There is no other direct evidence on this point, and no explicit finding of the court thereon. Plaintiffs' suit against Stockbridge & Teague in which the attachment was issued and levied on the goods in controversy was on the two unsecured notes.

Some time prior to November, 1885, Stockbridge sold out his interest to Teague, the latter assuming the debts of the firm. Teague paid Stockbridge no money, but took the goods to pay the debts. Reeves was sent by plaintiffs from Dallas to San Saba to see Stockbridge and Teague about securing or collecting the two first notes then due. He found Teague in possession of the stock of goods sold by plaintiffs to Stockbridge & Teague. Reeves wanted the notes paid or secured. After an effort during the day to raise money Teague met Reeves at his hotel about 8 o'clock that night, and found that he had prepared a bill of sale for the stock to plaintiffs in consideration of the two unsecured notes amounting to about $800. Teague declined to take that amount, but offered to let plaintiffs have the goods at invoice price, to pay the two unsecured notes first, the balance to be credited on the notes on which Baker was security. This Reeves refused to do. Teague then went down town and sold the goods to Baker, made him a bill of sale, and delivered to him the keys of the store. The consideration was that Baker assumed payment of the four notes on which he was security, amounting to about $1600, and released Stockbridge & Teague from all liability thereon. Baker was worth at the time about $50,000. He paid the note due January 22, 1886. Very little of the stock had been sold at the time of the sale or when this case was tried. Baker testified that he bought the stock of goods in order to protect himself as the surety of Stockbridge & Teague. He had notice that Reeves was trying to buy the goods for plaintiffs. Plaintiffs' attachment was issued and levied after the sale. On January 1, 1886, the claimant employed Teague to take charge of the stock and sell it for him. His agreement was to sell the goods so as to net Baker the invoice price, and whatever there was over he was to receive for his services. The invoice price of the stock of goods at the time of the levy was about $2000. At the time of sale they were fairly worth about $1600. Neither Stockbridge nor Teague had any other property subject to execution when the sale was made.

Plaintiffs by their third and fifth assignments of error complain of the findings of the court on the facts of the case, (1) that Baker was surety on four notes, and (2) as to the circumstances attending the sale. The latter finding is clearly supported by the evidence; and the former is not unsupported. If, as according to the testimony of the witness Reeves, Baker signed the two last notes by mistake, whether or not he would be bound as a surety thereon would be a question of law arising from the facts. This question is not properly before us, neither under the pleadings nor the evidence. Again, if Baker had the right as surety to take a conveyance of a sufficient amount of the goods to protect himself, he could also for any balance of the sum agreed to be paid therefor assume a debt of the seller for which he was not before liable, being bound only to see that such balance was so applied. Ellis v.

Valentine, 65 Texas, 532. If he has not paid all that he assumed it is the fault of the plaintiffs who seized the goods under their writ of attachment. They will not be permitted to set aside the sale and apply the goods to their unsecured notes, and at the same time require its terms to be complied with by demanding payment of the notes which were assumed.

"The right of a creditor to receive property from an insolvent debtor in payment of a debt due to him, if the same be openly done, and more property is not taken than is reasonably necessary to pay the debt, although the creditor may know at the time he so receives the property that he will thereby prevent other creditors from enforcing their claims, and although the creditor may know that the debtor is prompted to give him the preference through motives of friendship, is recognized. Such reception of property, however, must be bona fide —that is, for the sole purpose of securing the debt and not with intent to cover up any part of the property or its proceeds for the benefit of the debtor to the prejudice of other creditors." 15 Texas, 188, 506; Greenleve v. Blum, 59 Texas, 126. Whether Baker's claim was just or not was determined by the court, and its findings necessarily affirm that it was. They established conclusively also, as matters of fact, the good faith of Baker in the purchase of the goods, and that he paid for them a full and fair consideration by assuming the four notes amounting to twice as much as Reeves had offered.

There is only one question presented by the remaining assignments of error, including the first, which assigns as error the action of the court in overruling the plaintiff's demurrer to claimant's answer, and that is the controlling question in the case. Was Baker as surety for Stockbridge & Teague on obligations that had not matured at the time of the transfer such a creditor or other person with a claim as could purchase from an insolvent debtor in order to protect himself, considered both as to whether a surety or a surety on an obligation that has not matured is such a person or creditor? Would the consideration for the transfer be deemed valuable in law? Finally, was Baker, the surety, a creditor of or other person with a demand against Stockbridge & Teague? It will be observed that in the consideration of this question we are not confined to the word "creditor" alone as descriptive of the class of persons protected by the statute, for the language of the statute is "creditors, purchasers, or other persons." Rev. Stats., art. 2465. If a creditor or other person having a legal demand against another receives from his debtor property for his claim, bona fide, and no more than is reasonably sufficient to pay the same, he may do so, because he is a "creditor" or "other person" who is protected by the statute; the principle of law being that if the debtor transfers the property directly to the person to whom the law intends it should go, the conveyance can not be fraudulent. And the same may be said of sales

permitted to stand where the debtor has sold his property openly for a fair price and appropriated the proceeds to the payment of his just obligations; so also where the purchaser takes the property and assumes and at once pays debts of the seller.

The sole object of the statute is to protect lawful debts, claims, or demands; and if Baker's liability on the notes of Stockbridge & Teague amounted to a lawful debt, claim, or demand against them, and the transfer was otherwise in good faith and in accordance with the principles of law often announced authorizing the creditor to receive property from his debtor in satisfaction of his claim, then the sale was valid. A liberal construction is given to the words "creditors and others." Mr. Bump, in his work on Fraudulent Conveyances, says: "The character of the claim, if it is just and lawful, is immaterial. It need not be due, for although the holder can not maintain an action until it is due, he nevertheless has an interest in the property as a fund out of which the demand ought to be paid." P. 492. And again: "A contingent claim is as fully protected as one that is absolute. A liability as surety is within the statute as much a liability as principal." Id. It is a general rule that all claims arising from contract are in force from the date of the agreement. It has been held that a surety is the creditor of his co-surety. How v. Ward, 4 Greenl., 195. These questions are ably discussed in the opinion of Justice Bronson in the case of Van Wyck v. Seward, 18 Wendell, 375. In concluding the discussion of the question whether appellant in that case was entitled to the protection of the statute as a creditor of William Seward, the learned judge said: "In these and all other cases depending upon contract the person to whom the engagement is made is as much a creditor within the meaning of the statute as though he had a debt on which the right of action already existed. There is no reason why he should not be entitled to the same protection in the one case as in the other. In the language of Chief Justice Mellen in How v. Ward, 'although he can not maintain an action on the contract until it has been violated, still he has an interest in the property conveyed as a fund out of which the debt ought to be paid.'" In the City of Bonham v. Taylor, ante, 59, decided at the present term of this court, it was held that the sureties on the bond of a city treasurer had the right to protect themselves by injunction restraining the treasurer from paying over money which had been raised for city purposes by taxation to a bank to which the city council had agreed to lend it. Had the sureties on the city treasurer's bond been compelled to await action until their liability accrued it would have been inequitable and unjust; and so if Baker should be forced to wait until the maturity of the notes on which he was surety for Stockbridge & Teague, and they had made default thereon, the goods to which he as well as other creditors had a right to look for the payment of the debts for which he was bound would in all probability

have been absorbed by the plaintiffs in this case to satisfy their unsecured notes. Baker was a creditor of Stockbridge & Teague such as entitled him to receive a conveyance of the goods in controversy to indemnify him against the ultimate liability on assumption by him of the debts for which he was security.

We are of the opinion that the sale was also complete, and not a mortgage or conditional sale, and that the title to the goods vested at once in Baker; yet if it had been a mortgage or conditional sale with Baker in possession he would have still had the right to the possession of the property until the conditions had been complied with or broken. In either event the judgment of the court below in his favor was right and should be affirmed.

*Affirmed.*

Adopted May 26, 1891.