ZAHRA SPIRITUAL TRUST,
Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

MUDIN, INC. and Dar Al–Hikmah,
Plaintiffs–Appellants,

v.

UNITED STATES of America,
Defendant–Appellee.

ZAHRA SPIRITUAL TRUST and Dar
Al–Hikmah N.V., Inc.,
Plaintiffs–Appellants,

v.

UNITED STATES of America,
Defendant–Appellee.

Hamid JAFAR, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Hosam A. RAOUF, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 89–5576.

United States Court of Appeals,
Fifth Circuit.

Aug. 29, 1990.

Gerald T. Drought and Bennett L. Stahl, Martin & Drought, Inc., San Antonio, Tex., for plaintiffs-appellants.

Mary C. Vance, Dept. of Justice, Tax Div., Dallas, Tex., Gary R. Allen, Chief, Regina S. Moriarty and William S. Estabrook, Appellate Section, Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before REAVLEY, JONES, and DUHÉ, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Dar Al–Hikmah N.V., Inc., Mudin, Inc., and Zahra Spiritual Trust brought suit against the United States under 28 U.S.C. § 2410 to quiet title to certain real property and to discharge federal tax liens upon the property. Following a bench trial, the district court dismissed appellants' consolidated action and declared the liens valid. Although the district court evaluated the evidence thoroughly and conscientiously, we must vacate and remand for additional proceedings consistent with this opinion.

**1.** The Haeris unsuccessfully protested the merits of the tax liabilities in the United States Tax Court. *See Fadhlalla Haeri and Muneera Haeri*

## I.

### PROCEEDINGS

This dispute arises out of a tax jeopardy assessment rendered on April 9, 1986 by the IRS against Fadhlalla and Muneera Haeri for income tax liability during the tax years 1981 and 1982.[1]

On April 10 and 14 of 1986, IRS filed several notices of federal tax lien reflecting assessments against property owned by the Haeris in Blanco and Bexar Counties, Texas. In September of 1986, IRS also filed notices of federal tax lien against the following persons and entities who allegedly held property as nominees of the Haeris: Dar Al–Hikmah, on separate parcels located in Blanco and Bexar Counties; Zahra Trust a/k/a Zahra Spiritual Trust on property located in Blanco County; and Mudin, Inc. on property located in Bexar County.

In rendering judgment for IRS, the district court found that Dar Al–Hikmah fraudulently conveyed certain Blanco County property to Zahra and that Dar Al–Hikmah and Mudin held certain Blanco County and Bexar County property as nominee/alter ego of the taxpayers. Zahra, Dar Al–Hikmah and Mudin appeal.

### II.

### FACTS

During the 1970's, Mr. Haeri and his friend and relative, Mr. Jafar, formed a partnership named Project Development Company ("PDC"), which provided consulting services. PDC was located in Sharjah, United Arab Emirates. In 1978, after deciding to abandon the business world and devote his time to studying and teaching the Islamic faith, Haeri turned over his 47% interest in PDC to Jafar. Jafar established the Haeri Trust, an entity intended to provide Haeri, the sole beneficiary, with a reasonable standard of living. The Haeri Trust assets included: forty-seven (47) shares of PDC, five-hundred (500) shares of Dar Al–Hikmah, two (2) shares of Haeri

*v. Commissioner of Internal Revenue,* 56 TCM (CCH) 1061, 1069 (1989).

and Associates, and all the shares of Mudin, Inc.

Dar Al–Hikmah, a Netherland Antilles Corporation, N.V. incorporated in 1979, was formed and funded by Jafar and given to the Haeri Trust. Ownership of Dar Al–Hikmah is designated by bearer shares held by the Trustees of the Haeri Trust. Dar Al–Hikmah's sole business is the ownership of real estate in Bexar and Blanco Counties. Haeri held a power of attorney for Dar Al–Hikmah and is the registered agent for the company in Texas. The funds used by Dar Al–Hikmah to acquire certain tracts of real property in Bexar County were provided by PDC. Fadhlalla and Muneera Haeri authorized the disbursement of purchase funds and negotiated the purchase of the Bexar County property. The Haeris, their guests, and servants resided on the tracts located in Bexar County. They did not pay rent to the corporation. Dar Al–Hikmah funds were used to pay the Haeris' personal living expenses.

Mudin, Inc., a Texas corporation, was formed in October of 1980. Muneera Haeri serves as Mudin's president, secretary, and director. Mudin was formed with the sole purpose of holding title to real estate in Bexar County and carries on no other business activities. Mudin's initial shareholders were Muna Haeri [2] and Fadhlalla Haeri as custodian for his minor daughter, Dina Haeri; the shares were later transferred to the Haeri Trust. Fadhlalla Haeri was Mudin's sole director until August of 1982. Fadhlalla and Muneera Haeri both served as officers of Mudin. Muneera Haeri managed Mudin's bank account and used the funds to pay the Haeris' personal expenditures.

sion to disregard their corporate forms and treat them as alter egos of the taxpayers. Appellants object to the court's application of law as well as its findings of fact.

We review the district court's findings of fact under the clearly erroneous standard, see Fed.R.Civ.P. 52; and we review de novo the district court's conclusions of law. Our court has previously held that a district court's finding of an alter ego relationship is reviewed for clear error. *United States v. Jon–T Chemicals, Inc.,* 768 F.2d 686, 694 (5th Cir.1985), *cert. denied,* 475 U.S. 1014, 106 S.Ct. 1194, 89 L.Ed.2d 309 (1986); *see also Shades Ridge Holding Co., Inc. v. United States,* 888 F.2d 725, 729 (11th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1472, 108 L.Ed.2d 609 (1990); *Valley Finance Inc. v. United States,* 629 F.2d 162, 172 (D.C.Cir.1980), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981).[3] Under the clearly erroneous standard, "[w]e will reverse only if, after reviewing the evidence as a whole, we are 'left with the definite and firm conviction that a mistake has been committed.' " *Jon–T Chemicals,* 768 F.2d at 694 (citing *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). In determining whether the appellants are the alter egos of the taxpayers, and whether the taxpayer has an interest in property to which the government's tax lien attached, we look to state law. *Aquilino v. United States,* 363 U.S. 509, 513, 80 S.Ct. 1277, 1280–81, 4 L.Ed.2d 1365 (1960); *United States v. Chapman,* 756 F.2d 1237, 1240 (5th Cir.1985) ("state law of Texas defines whether the taxpayer has a property right in the Texas-sited realty; if he does it is subject to the government tax lien").

### III.

### STANDARD OF REVIEW

Dar Al–Hikmah and Mudin contend that under Texas law, there is insufficient evidence to support the district court's deci-

### IV.

### DISREGARDING THE CORPORATE FICTION

The Texas Supreme Court recently summarized and discussed the various theories

---

**2.** The district court stated in fact finding no. 87 that Muneera Haeri was an initial shareholder. The original shares of stock and Muneera Haeri's testimony indicate that Muna was in fact one of the initial shareholders.

**3.** *Castleberry v. Branscum,* 721 S.W.2d 270, 277 (Tex.1986) ("The different bases for disregarding the corporate fiction involve questions of fact.").

for disregarding the corporate form. *See Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex.1986). The *Castleberry* court began its discussion by stating generally that the corporate form will be disregarded when it "has been used as part of a basically unfair device to achieve an inequitable result." *Id.* at 271 (footnote omitted). The court then listed several theories through which the corporate form may be disregarded:

(1) when the fiction is used as a means of perpetrating fraud;

(2) where a corporation is organized and operated as a mere tool or business conduit of another corporation;

(3) where the corporate fiction is resorted to as a means of evading an existing legal obligation;

(4) where the corporate fiction is employed to achieve or perpetrate monopoly;

(5) where the corporate fiction is used to circumvent a statute; and

(6) where the corporate fiction is relied upon as a protection of crime or to justify wrong.

*Id.* at 272 (citations and footnotes omitted).[4]

The *Castleberry* court distinguished between the general concept of disregarding the corporate fiction and more specifically treating a corporation and its shareholder as alter egos of each other. Alter ego was recognized as a distinct legal basis for disregarding the corporate fiction. *See Castleberry*, 721 S.W.2d at 272. In analyzing the doctrine of corporate disregard in light of *Castleberry*, our court has endeavored "to isolate analytically the strands of the doctrine...." *Gibraltar Savings v. LD Brinkman Corp.*, 860 F.2d 1275, 1288 (5th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 2432, 104 L.Ed.2d 988 (1989).

The district court found three separate bases, including alter ego, illegal purpose, and sham to perpetrate fraud, for disregarding the corporate fictions of Mudin and Dar Al–Hikmah. Appellants claim that the court erred in disregarding their corporate fictions because the taxpayers did not own Mudin or Dar Al–Hikmah or serve as officers or directors of Dar Al–Hikmah. Appellants also point out that the Government's theory of corporate disregard, holding corporations liable for the taxpayers' individual obligations, is unique. The Government asks us to affirm and hold two corporate entities accountable for the tax obligations of individuals who are not record shareholders of those corporations.

## A. Reverse Piercing

The Texas Supreme Court in *Castleberry* indicated that the traditional goal for disregarding the corporate fiction is to hold *individuals* liable for the debts of the *corporation:*

The corporate form normally insulates shareholders, officers, and directors from liability for corporate obligations; but when these individuals abuse the corporate privilege, courts will disregard the corporate fiction and hold them individually liable.

*Castleberry*, 721 S.W.2d at 271 (citations omitted). "Owners that fail to maintain full legal formalities cannot expect to enjoy the limited liability that flows from the corporate form." *Gibraltar Savings*, 860 F.2d at 1288.

In this case, however, the Government sought to apply the alter ego doctrine in reverse—to hold a corporation's assets accountable for the liability of individuals who treated the corporation as their alter ego. 1 W. Fletcher, Cyclopedia of the Law of Private Corporations § 41.70, at 458–59 (1983 & Supp.1989). *E.g. American Petroleum Exchange, Inc. v. Lord*, 399 S.W.2d 213, 216–17 (Tex.Civ.App.—Fort Worth 1966, writ ref'd n.r.e.) (where debtor held majority of stock individually and as trustee for minor daughter and treated corporation as alter ego, court disregarded corporate fiction and held corporation accountable for debtor's liability). The ultimate goal in a reverse piercing case is unique; rather than merely disregarding the corporate fiction and holding the shareholders

---

**4.** In a footnote, the *Castleberry* court stated that "[i]nadequate capitalization is another basis for disregarding the corporate fiction." *Id.* at 272 n. 3 (citation omitted).

accountable, the court treats the individual and the corporation as "one and the same." *See* 1 W. Fletcher, *supra*, § 41.70, at 458. "The remedy is equally available to hold the corporation liable for debts of the controlling shareholders where the shareholders have formed or used the corporation to secrete assets and thereby avoid preexisting personal liability." 1 W. Fletcher, *supra*, § 41.70, at 213 (Supp.1989) (citing *Estudios, Proyectos E Inversiones De Centro America, S.A. (EPICA) v. Swiss Bank Corp.*, 507 So.2d 1119 (Fla.Dist.Ct.App. 1987)). Upon a sufficient showing "that the corporation is the alter ego of the debtor, the corporation is treated as the debtor and its property may be attached...." *Id.*

The "reverse piercing" theory urged by the Government has been recognized in other tax cases. *See, e.g., Shades Ridge Holding Co. v. United States*, 888 F.2d 725, 728 (11th Cir.1989) (court found that corporation was alter ego of taxpayer and held corporation liable for taxpayer's obligation), *cert. denied,* —— U.S. ——, 110 S.Ct. 1472, 108 L.Ed.2d 609 (1990); *Valley Finance, Inc. v. United States*, 629 F.2d 162, 171–73 (D.C.Cir.1980), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981). The Government does not, however, cite any specific Texas authority in support of disregarding the corporate existence of Dar Al–Hikmah and Mudin in reverse, nor does *Castleberry* indicate whether each basis it identifies for piercing the corporate veil might operate in reverse. Nevertheless, a few Texas cases shed light on this unusual application of corporate disregard.

In *American Petroleum Exchange, Inc. v. Lord,* the court allowed creditors to reach corporate assets to satisfy an individual debtor's liability where the debtor owned the great majority of the stock and "treated the corporation as his alter ego." *Lord,* 399 S.W.2d at 216–17. Additionally, in dividing marital property upon divorce, the Texas courts have had occasion to dis-

regard the corporate fiction in reverse under the alter ego theory and to treat the assets and earnings of the corporation as if they were those of the individual. *E.g. Dillingham v. Dillingham,* 434 S.W.2d 459, 462 (Tex.Civ.App.—Fort Worth 1968, writ dism'd). In *Zisblatt v. Zisblatt,* for example, the Texas court of appeals in Fort Worth stated that "[i]n an action for divorce, [alter ego] is applied to properly characterize corporate assets as part of the community estate." 693 S.W.2d 944, 952 (Tex.App.—Fort Worth 1985, writ dism'd); *see also Dillingham,* 434 S.W.2d at 462 (court affirmed trial court's division of property, which awarded portion of increased value of husband's wholly owned corporation, based on finding that corporation was alter ego of husband).

■ Although the *Zisblatt* and *Dillingham* courts discussed several bases and factors for disregarding the corporate fiction, both courts utilized the alter ego theory to treat corporate assets or earnings as those of an individual. *See Zisblatt,* 693 S.W.2d at 955; *Dillingham,* 434 S.W.2d at 462. In Texas, therefore, it would appear that a reverse piercing case rests upon a finding that the individual (debtor) and the corporation should be treated as alter egos.

Thus, the district court was correct insofar as it held that Texas law would allow the Government to reach the assets of Dar Al–Hikmah and Mudin upon showing an alter ego relationship between the taxpayers and the corporations. Although the "illegal purpose" and "sham to perpetrate a fraud" strands of *Castleberry* may provide bases for disregarding the corporate fiction, a reverse piercing case requires the creditor to establish an alter ego relationship between the individual debtor and corporation in order to treat them as one and the same. *See Zisblatt,* 693 S.W.2d at 955; *Dillingham,* 434 S.W.2d at 462; *Lord,* 399 S.W.2d at 216–17.[5] We now consider whether the district court correctly found

---

5. *E.g. Zisblatt,* 693 S.W.2d at 955 ("Clearly an adherence to the corporate fiction, under the facts of the present case, would both sanction a fraud and promote injustice.... [T]he evidence overwhelmingly establishes that Dispo was the

alter ego of Jack at the time the parties were married, at the time that stock was ostensibly transferred to Mirchin and through the time of the parties' divorce."); 1 W. Fletcher, *supra,* § 41.70, at 214 (Supp.1989).

that the appellants were the alter egos of the taxpayers.

## B. Alter Ego

■ The *Castleberry* court explained that the alter ego theory provides a basis for disregarding corporate form "where a corporation is organized and operated as a mere tool or business conduit" for another entity. 721 S.W.2d at 272. In determining whether an alter ego relationship exists, the court should focus on the relationship between the corporation and the entity or individual that allegedly abused corporate formalities. *See id.* The factors relevant to the court's inquiry include: "the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *Id.* (citing *Lucas v. Texas Indus., Inc.*, 696 S.W.2d 372, 374 (Tex.1984); *Gentry v. Credit Plan Corp.*, 528 S.W.2d 571, 573–75 (Tex.1975)).

The district court found that Mudin was formed for the purpose of holding title to property as nominee of the taxpayers, that Mudin conducted no other business except to hold title to real estate, and that the taxpayers' family resided on Mudin's property without a lease agreement or any rental obligations. Additionally, Muneera Haeri was the president, secretary and director of Mudin. The court also found that funds were transferred between the taxpayers' individual checking accounts and the accounts of Mudin, over which Muneera Haeri was a signatory. The court further found that the taxpayers' and Mudin's financial transactions were extensively intertwined without observance of proper corporate formalities so as to render it

unjust to consider the corporation a separate entity.

The district court also provided detailed findings as to the extensive control the taxpayers exercised over Dar Al–Hikmah. Fadhlalla Haeri was Dar Al–Hikmah's registered agent in Texas and held a power of attorney for the corporation. The taxpayers lived in homes owned by Dar Al–Hikmah without a lease agreement or rental obligations. The purchases and transfers of property were made with funds from Project Development Corporation. Dar Al–Hikmah funds were used to pay the personal expenditures of the taxpayers. The taxpayers negotiated the purchase of several of the tracts of land held by Dar Al–Hikmah. The court concluded that the financial transactions of Dar Al–Hikmah were so intertwined with those of the taxpayers and the nominees of the taxpayers, without observance of proper corporate formalities, as to render it unjust to consider the corporation a separate entity.

■ The court's subsidiary fact findings as to the extensive relationship and unity between the taxpayers and the corporations have abundant support in the record and are not clearly erroneous. We determine, however, that these findings alone cannot establish an alter ego relationship under Texas law, because the Haeris are not direct shareholders of Dar Al–Hikmah or Mudin. The Haeri Trust, of which Fadhlalla Haeri was the sole beneficiary, held the shares of both Dar Al–Hikmah and Mudin. The Haeri Trust was funded by Mr. Jafar, who established the trust for Fadhlalla Haeri after Haeri turned over his 47% interest in PDC to Mr. Jafar.[6]

Our research yielded a few Texas cases that have refused to disregard the corporate fiction under the alter ego doctrine and to treat an individual and corporation as one and the same where the individual did not own any of the corporation's outstanding stock. *E.g. George v. Houston*

---

**6.** Appellants conceded in their brief that "the Taxpayers transferred substantial portions of their assets to the Haeri Trust" before their tax obligation arose. The appellants argue that the Government did not establish that the Haeri Trust is a sham, which is necessary for the

taxpayers to have an alter-ego relationship with Dar Al–Hikmah and Mudin. The parties did not brief the issue whether the circumstances surrounding the creation of the Haeri Trust provided the taxpayers with a present ownership interest in the trust, rather than a beneficial interest.

*Boxing Club, Inc.*, 423 S.W.2d 128, 132 (Tex.Civ.App.—Houston [14th Dist.] 1967, writ ref'd n.r.e.). In *George*, a boxing promoter brought a contract claim against a corporation and Adams, an individual who had loaned the corporation money. Noting that the corporation's stock was held in trust for Adams' children, the court refused to apply the alter ego theory, stating:

> Additionally, we find no Texas cases applying the alter ego doctrine to a situation where the individual owned none of the outstanding stock, which is the situation in the case at bar.

*Id.* at 132; *see also Lane v. Dickinson State Bank*, 605 S.W.2d 650, 653 (Tex.Civ. App.—Houston [1st Dist.] 1980, no writ) (in suit by employee against employer, bank, and bank president, court refused to find that bank and bank president were alter egos of corporate employer); *Patterson v. Wizowaty*, 505 S.W.2d 425, 428 (Tex.Civ. App.—Houston [14th Dist.] 1974, no writ) ("no Texas authority for the proposition that an individual can be held personally liable under the alter ego doctrine when he owns none of the outstanding stock of the corporation"). These cases suggest, and no cases that we uncovered dispute, that the Texas courts will not treat a corporation and an individual as one and the same unless the individual has some ownership interest in the corporation.

The Government attempts to avoid this issue by arguing that the taxpayers had an ownership interest in the trust and, as such, were owners of the corporations.[7] The district court, however, did not address the questions whether, under Texas trust law, the taxpayers had a present ownership interest in the Haeri Trust and whether such an ownership interest was sufficient to conclude that the Haeris were shareholders of Mudin and Dar Al–Hikmah. The parties seem to have raised the issue of the taxpayers' interest in the Haeri Trust in the court below, but they have not thoroughly briefed these questions under Texas law in the present appeal. Although the district court furnished some findings that assist in the resolution of these issues, it is not clear that the court's attention was focused on the relationship between the taxpayers and the Haeri Trust.

Accordingly, we must vacate the judgment of the district court on the issue whether the taxpayers are alter egos of the corporations. On remand, the district court should determine from the record whether, under Texas law, the taxpayers had an ownership interest in the Haeri Trust and if such an ownership interest exists, whether that interest is sufficient to equate them with shareholders for purposes of disregarding the corporate fictions of Dar Al–Hikmah and Mudin according to the strict alter ego theory.

## V.

### FRAUDULENT CONVEYANCE

Zahra appeals the district court's order refusing to remove the IRS tax lien on the Blanco County property that Dar Al–Hikmah conveyed to Zahra on August 12, 1984. The district court found that the conveyance from Dar Al–Hikmah to Zahra was a fraudulent conveyance under Texas law.[8] Zahra attacks the district court's conclusion on two bases. First, Zahra contends that the IRS failed to apprise Zahra that it would proceed on a theory of fraudulent conveyance. Zahra also asserts that the

---

7. The Government conceded in a footnote of its brief that the Haeri Trust "is technically the owner of the corporations," but asserts nonetheless that we should disregard the trust relationship between the taxpayers and the Haeri trust. The Government contends that federal tax law and Texas trust law provide a basis for holding that the taxpayers are de facto owners of the corporations. *E.g. Don Gastineau Equity Trust v. United States*, 687 F.Supp. 1422, 1426–27 (C.D.Cal.1987); *Bank of Dallas v. Republic National Bank*, 540 S.W.2d 499, 502 (Tex.Civ. App.—Dallas 1976, writ ref'd n.r.e.).

8. The court properly applied the Texas Fraudulent Transfers Act, Tex.Bus. & Com.Code Ann. § 24.03 (Vernon 1968), which was prospectively repealed by Act of Sept. 1, 1987, ch. 1004 § 1, 1987 Tex.Gen. Laws 3394. The fraudulent transfer statute that applies to transfers made on or after Sept. 1, 1987 is found at Tex.Bus. & Com.Code Ann. §§ 24.001–24.009 (Vernon 1987).

district court's finding of a fraudulent conveyance resulted from an erroneous application of law.

## A. Notice of Legal Theory

In attacking the district court's finding that Zahra was a fraudulent transferee of Dar Al–Hikmah, Zahra contends that the Government failed to comply with Fed.R. Civ.P. 8(c), governing the pleading of affirmative defenses, in raising the issue of fraudulent conveyance. Zahra complains that neither the IRS's notice of tax lien nor its court pleadings informed Zahra of the theory of fraudulent conveyance, and the Government abruptly changed its theory at trial. The Government contends, on the other hand, that the fraudulent conveyance theory it asserted in defending Zahra's suit to remove the tax lien was not an affirmative defense and that Zahra had notice of the Government's theory. A review of the record supports the IRS.

Zahra's own Motion for Summary Judgment and Supporting Brief argued that it was not a nominee or fraudulent transferee of the taxpayers, but Zahra also discussed at length whether creditors could reach assets deposited in the name of a third party under sections 24.02 and 24.03 of the Texas Fraudulent Transfer Act,[9] including the issues related to the time of the tax assessment, accrual of the fraudulent transfer claim, and whether a gratuitous transfer is fraudulent.

Even if the foregoing did not indicate Zahra's notice of the fraudulent transfer theory, the Government's response to Zahra's Summary Judgment Motion made the Government's position clear. The Government stated in its brief:

> It is the position of the United States in this litigation that it was an existing creditor of the Haeris and their nominee, Dar Al–Hikmah, at the time this convey-

ance was made and that the transfer was fraudulent.

Additionally, the Government argued in its trial brief that the property transfer from Dar Al–Hikmah to Zahra was fraudulent under sections 24.02 and 24.03 of the Texas Fraudulent Transfer Act. Despite its complaint, Zahra has not directed us to any evidence showing resulting prejudice from the Government's failure specifically to plead the fraudulent transfer theory as an affirmative defense. Zahra did not, for instance, request a trial continuance to address the "new issue."

## B. Texas Fraudulent Transfers Act

Zahra also objects to the district court's conclusion that the transfer of Blanco County property from Dar Al–Hikmah to Zahra on August 12, 1984, was a fraudulent conveyance. The district court found that the conveyance was fraudulent under sections 24.02 and 24.03 of the Texas Fraudulent Transfers Act.[10] The district court's judgment that Zahra received a fraudulent conveyance from Dar Al–Hikmah rested in part on the implicit finding that Dar Al–Hikmah was the nominee/alter ego of the taxpayers. Before addressing Zahra's other objections to the court's finding of a fraudulent conveyance, we note that the ultimate resolution of this issue will depend upon whether Dar Al–Hikmah is the nominee/alter ego of the taxpayers, which must be resolved on remand.

Sections 24.02 and 24.03 of the Texas Fraudulent Transfers Act provide separate theories by which creditors can set aside certain transfers of assets.

Section 24.02(a) provides, generally, that a transfer of property is void as to a creditor if the transfer was intended to delay, hinder, or defraud any creditor from obtaining "that to which he is, *or may become*, entitled."[11] Section 24.03

---

**9.** Tex.Bus. & Com.Code Ann. §§ 24.02, 24.03 (Vernon 1968).

**10.** Tex.Bus. & Com.Code Ann. §§ 24.02, 24.03 (Vernon 1968).

**11.** Tex.Bus. & Com.Code Ann. § 24.02 (Vernon 1968) provides:

§ 24.02 **Transfer to Defraud Is Void**

(a) A transfer of real or personal property, a suit, a decree, judgment, or execution, or a bond or other writing is void with respect to a creditor, purchaser, or other interested person if the transfer, suit, decree, judgment, execution, or bond or other writing was intended to

provides that a transfer is void with respect "to an existing creditor" if "not made for a fair consideration." [12]

*United States v. Chapman,* 756 F.2d 1237, 1240 (5th Cir.1985) (emphasis in original). As a comparison of these provisions reveals, section 24.02 provides a theory to attack certain transfers intended to delay, hinder, or defraud existing and subsequent creditors, while section 24.03 may only be utilized by one who was a "creditor of the transferor" when the transfer occurred. *Cf.* Tex.Bus. & Com.Code Ann. §§ 24.02, 24.03; *see also* 17 Tex.Jur. 3rd *Creditors Rights and Remedies* § 576, at 583–84 (section 24.03 protects existing creditors).

Zahra argues that the court erred in finding § 24.03 satisfied because the government was not a creditor of the taxpayers when Dar Al–Hikmah transferred the property to Zahra and because the transfer was for fair consideration.

■ Insofar as Zahra contends that the government did not become a creditor until the jeopardy tax assessment occurred, we disagree. The Texas courts have given a broad construction to the term creditor, so that the Act "protects the holders of unliquidated unmatured contingent claims." *See Burnett v. Chase Oil & Gas, Inc.,* 700 S.W.2d 737, 743 (Tex.App.—Tyler 1985, no writ). As the *Burnett* court put it, "[t]he existing creditors who may attack the transfer need not have been the owners of a fully matured and liquidated debt." *Id.* The character of the claim, if it is just and lawful, is immaterial. It need not be due; for, although the holder cannot maintain an action until it is due, he

nevertheless has an interest in the property as a fund out of which the demand ought to be paid.... A contingent claim is as fully protected as one that is absolute.

*Id.* (quoting *Frees v. Baker,* 81 Tex. 216, 221, 16 S.W. 900, 901 (1891)). The trial court found that the IRS had visited the Haeris twice about their taxes in 1984 shortly before Dar Al–Hikmah executed a deed to Zahra Spiritual Trust. On the second visit, an investigation of the Haeris' 1981 and 1982 taxes was opened. Later, a jeopardy assessment exceeding $10 million issued against the taxpayers for these two years. We are sensitive to Zahra's argument that a conveyance did not fall within § 24.03 if the debtor was wholly unaware of an existing creditor's claim. This potential outer limit of § 24.03 liability is not before us, however, on the facts of this case. The Haeris knew IRS was investigating them for a potentially large assessment at the time Dar Al–Hikmah conveyed property to Zahra, and it was not unreasonable for the district court to conclude that IRS was an "existing creditor" as specified in § 24.03.

■ We now turn to Zahra's argument that the transfer was for valuable consideration. Zahra maintains that Dar Al–Hikmah's conveyance constituted a charitable contribution since Zahra is a bona fide charitable trust and, as such, the transfer was not without any consideration. Zahra cites *In re Missionary Baptist Foundation,* 24 B.R. 973, 979 (Bkrtcy.N.D.Tex. 1982) for the proposition that a debtor may receive spiritual fulfillment or consideration by making certain charitable contribu-

---

(1) delay or hinder any creditor, purchaser, or other interested person from obtaining that to which he is, or may become entitled; or

(2) defraud any creditor, purchaser, or other interested person of that to which he is, or may become, entitled.

(b) The title of a purchaser for value is not void under Subsection (a) of this section unless he purchased with notice of

(1) the intent of his transferor to delay, hinder, or defraud; or

(2) the fraud that voided the title of his transferor. (R.S. Art. 3996 (part), amd. by 40th Legis., Ch. 30, Sec. 1.)

12. Tex.Bus. & Com.Code Ann. § 24.03 (Vernon 1968) provides:

**§ 24.03 Debtor's Transfer Not for Value Is Void**

(a) A transfer by a debtor is void with respect to an existing creditor of the debtor if the transfer is not made for fair consideration, unless, in addition to the property transferred, the debtor has at the time of transfer enough property in this state subject to execution to pay all of his existing debts.

(b) Subsection (a) of this section does not void a transfer with respect to a subsequent creditor of or purchaser from the debtor. (R.S. Art. 3997.)

tions. We are unpersuaded by *Missionary Baptist Foundation* because the decision is distinguishable on its facts and the applicable law. Applying section 548(a)(2)(A) of the Bankruptcy Code, the court rejected the trustee's argument, on the facts involved, that the debtor did not receive "reasonably equivalent value" from periodic contributions to a nonprofit corporation, Upreach Ministries, Inc. *See Missionary Baptist Foundation,* 24 B.R. at 979.

The relevant inquiry under section 24.-03(a) is whether the debtor received monetary, not spiritual, consideration. *E.g. Glenney v. Crane,* 352 S.W.2d 773, 775–76 (Tex.Civ.App.—Houston [1st Dist.] 1961, writ ref'd n.r.e.) (court compared legal value of the consideration received by the debtor with the value of the property conveyed); *Hartman v. Hartman,* 32 S.W.2d 233, 234 (Tex.Civ.App.—Austin 1930, writ dism'd w.o.j.) (conveyance for recited consideration of $5 and love and affection is insufficient as against prior creditors). As the Texas Supreme Court pointed out in 1896:

> The purpose of the [Texas fraudulent transfer] statute is the protection of creditors against voluntary conveyances by their debtors. *It is based upon the maxim that a man must be just before he is generous.*

*Walker v. Loring,* 89 Tex. 668, 673, 36 S.W. 246, 247 (1896) (emphasis added). Additionally, it is not disputed that the transfer of property from Dar Al–Hikmah to Zahra was by gift deed. We agree with the district court's finding that Dar Al–Hikmah received no consideration within the meaning of section 24.03 when it transferred the Blanco tract to Zahra.

Because we affirm the district court's finding that the conveyance from Dar Al–Hikmah to Zahra violated § 24.03, if Dar Al–Hikmah is an alter ego of the taxpayers, we need not discuss the application of § 24.02.

## VI.

### CONCLUSION

Whether the government's tax lien claim against the three appellants will stand depends upon one missing link in an otherwise strong chain. On remand, the district court must determine whether that link, between the taxpayers, Haeri Trust, and Dar Al–Hikmah and Mudin, is of the sort that will justify a reverse piercing of the corporate veil. Accordingly, we VACATE and REMAND to permit the court to evaluate this issue according to the foregoing discussion.

VACATED and REMANDED with instructions.